IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JANICE OTERO BARRETO, ET AL.,

   Plaintiffs,

         v.                                    Civil No. 14-1457 (SEC)

DOCTORS' CENTER HOSPITAL, INC.

   Defendant.

**OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment seeking to dismiss Plaintiffs' discrimination and retaliation claims under the American with Disabilities Act, 42 U.S.C. § 12102, et seq. (ADA), and several state law claims under Puerto Rico law. The motion is **GRANTED**.

    **I.**    **Factual and Procedural Background**

On January 12, 2012, Plaintiff Janice Otero started working as Registry Clerk for Doctor's Center Hospital, Inc. (DCH) at the Medical Institute for Women. Before being hired, she mentioned during the job interview that she suffered from *alopecia totalis*, an autoimmune condition that causes hair loss in the scalp. At the time, however, the condition did not manifest itself. Six months after she began working, Otero started to lose hair and decided to shave her hair completely. On June 17, 2013, Otero sought psychiatric help from Dr. Luis Escabí, complaining of major depression and anxiety. In his deposition, Dr. Escabí stated that he accepted as true Otero's self-made diagnosis. Docket # 48-1, p. 12.

During her tenure at DCH, Otero never made an internal complaint of discrimination to the Human Resources' Department. Docket # 48-1, ¶ 16.[1]

---

[1] The EEOC Charge states that she complained of discrimination to DCH's officers. Docket # 48-7, p. 6. In her deposition, however, she admitted that she never complained of discrimination allegedly because Carmen

Notwithstanding, on September 17, 2013, Otero filed a charge before the Equal Employment Opportunity Commission (EEOC) and the Antidiscrimination Unit of the Puerto Rico Labor Department. The charge states that after she shaved her hair DCH started a campaign of discrimination and hostility against her including among other things: derogatory comments regarding her appearance; increased functions and duties; threats of termination if she refused to wear a wig; and unfair disciplinary actions. It also states that she was diagnosed with major depression as a result of the alleged discrimination. See Docket # 48-7.

Eight days after she filed the EEOC charge, DCH offered Otero another position which she rejected because it required rotating shifts. On January 23, 2014, DCH offered and Otero accepted a position in the Radiology Department, also as a Registry Clerk. May 23, 2014 was Otero's last day of work. That day she requested Dr. Escabí to put her on medical leave. Docket # 48-6, p. 145. Although Dr. Escabí did not observe that Otero was in any way disabled, he granted the request because he wanted to please her. Id. On June 9, 2014, while on leave, Otero and her boyfriend, Edwin Rivas, filed this action asserting federal claims under the ADA and the Fair Labor Standard Act, 29 U.S.C. § 201, et seq. (FLSA), and supplemental claims under Commonwealth law. Four months later, she moved to Florida and on December 5, 2014, she turned in a resignation letter saying that Dr. Escabí recommended that she should resign. In his deposition, however, Dr. Escabí said that he did not know why Otero decided to resign.

In a settlement conference, the parties settled Otero's FLSA claims. DCH now moves for summary judgment on the remaining federal claims arguing that Otero: (1) is not a disabled person nor was she ever regarded as a disabled person within the meaning of the ADA; (2) never made a request for an accommodation based on a disability; (3) never suffered from an adverse employment action by DCH; and (4)

---

Ramos, an officer from the Human Resources' Department, was one of the officers that discriminated against her. Docket # 59-3, p. 326.

never suffered from retaliation. It also seeks dismissal of Plaintiffs' supplemental claims under Puerto Rico law.

## II. Standard of Review

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), and must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam).

Once the movant properly configures a summary-judgment motion, the burden shifts onto the nonmovant—or "the party who bears the burden of proof at trial," Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014)—to "point to competent evidence and specific facts to stave off summary judgment." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). So the nonmovant cannot rest on conclusory allegations and improbable inferences. Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Technologies GmbH, 781 F.3d 510, 516 (1st Cir. 2015). Neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997), nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. Failure to shoulder this burden "allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

### III.    Applicable Law and Analysis

The ADA forbids employers from discriminating against qualified persons in "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment" because of a person's actual or perceived disability. 42 U.S.C. § 12112(a). To establish a *prima facie* case of disability discrimination under the ADA, Otero must prove that: (1) she was "disabled" within the meaning of the ADA; (2) that she was able to perform the essential functions of her job with or without accommodation; and (3) she was discharged or adversely affected, in whole or in part, because of her disability. See Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 82–83 (1st Cir. 2008).

a.  Disability within the meaning of the ADA

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102. To prove a substantial limit to a major life activity, "[e]vidence of a medical diagnosis of impairment, standing alone, is insufficient." Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011); see also Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002) ("It is insufficient...to merely submit evidence of a medical diagnosis of an impairment."). At the summary judgment stage, Otero must produce sufficient evidence that her impairment was "profound enough and of sufficient duration, given the nature of her impairment,' to hamper her ability to work." Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C., 258 F.3d 30, 33 (1st Cir. 2001).

Otero's claim of disability discrimination based on her alleged depression and anxiety fails. To start, this claim was not included in her EEOC charge. There, Otero characterizes the major depression and anxiety as a result of the alleged harassment by DCH, not as a disabling condition per se. See Docket # 48-7. Moreover, Plaintiff admitted that she never requested an accommodation in relation to any mental,

psychological, or psychiatric condition. Docket # 48-1, p. 14. Although Dr. Escabí once sent a letter asking DCH to place Otero in a "simpler" position, he did so because she requested him to do so. In his deposition, Dr. Escabí admitted that he did not even know what were the functions and duties of Otero's position. But most important, he admitted that during the time that he treated Otero, she was never disabled to work. Id., pp. 14-15. Therefore, Otero's depression and anxiety did not render her disabled within the meaning of the ADA.

As to the other disabling condition alleged by Otero, the Court has no trouble holding that *alopecia* is not a disabling condition within the meaning of the ADA. According to Otero's own dermatologist, *alopecia* is not a disabling condition. Its only symptom is hair loss. *Alopecia* does not cause pain or affect daily life activities such as eating, sleeping, walking, bathing, or working; it is only a matter of physical appearance. See Docket # 48-1, pp. 10-11. Because *alopecia* does not affect "major life activities," it cannot be considered a disabling condition under the ADA. See 42 U.S.C. § 12102. Indeed, although Otero initially alleged that *alopecia* was a disabling condition, see Docket # 1, ¶ 18, in response to DCH's motion for summary judgment she shifts gears and admits that *alopecia* is not a disabling condition that limits a major life activity. See Docket # 59-1, ¶¶ 39-47. Rather, Otero contends that DCH regarded her as being disabled. This claim falls short of the mark.

"A plaintiff claiming that he is 'regarded' as disabled cannot merely show that his employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled within the meaning of the ADA." Bailey v. Georgia-Pac. Corp., 306 F.3d 1162, 1169 (1st Cir. 2002). "Regarded as" claims fall within one of two categories: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Ruiz Rivera, 521 F.3d at 83 (quoting Sullivan v. Neiman Marcus Grp., Inc., 358 F.3d 110, 117 (1st Cir. 2004)).

Otero invokes the second category arguing that DCH mistakenly perceived that her *alopecia* substantially limited the major life activity of working. See Docket # 59, p. 6. Since "working" is the major life activity at issue, Otero "must demonstrate not only that the [DCH] thought that [she] was impaired in [her] ability to do the job that [she] held, but also that [DCH] regarded [her] as substantially impaired in 'either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities.'" Ruiz Rivera, 521 F.3d at 83.

The only evidence that Otero proffers in support of her "regarded as" claim is her testimony stating that after she shaved her head, her supervisors started making comments that she looked horrible, that her appearance was affecting the corporate image because the patients thought that she had a contagious disease, and that she should wear a wig. See Docket # 59, p. 6.[2] Otero argues in a conclusory fashion that these comments evince DCH's perception that she "could not work in any position within Defendant's operations." Docket # 59, p. 7.

These alleged comments, while insensitive, stand alone and in contrast with the rest of the record. In her deposition, Otero admitted that a year after she shaved her head, DCH assigned her exclusively to the task of registering patients. See Docket # 48-1, ¶ 87 & Docket # 59-3, p. 35. She also said that on February 2014, her supervisor at the time wanted her to close the cash register and attend patients among other duties. Docket # 59-2, p. 200. Actions speak louder than words and in this case the former show that DCH considered Otero able to perform the duties of her post, including that of attending patients.

---

[2] In her brief, Otero states that her supervisors constantly told her that "she should resign and leave." Docket # 59, p. 6. But the record citation referenced in Plaintiffs' opposing statement of material facts, Docket # 59-1, ¶¶ 6, 48, 77, does not support that proposition. Rather, it states only that one time—when denying a request for accommodation—Otero's supervisor, Marilyn Colón, told her that she could resign. See Docket # 59-2, pp. 107-108. Moreover, the statement of fact referenced fails to comply with Local Rule 56 (c) as it contains numerous additional facts, not included in a separate statement and without separating and supporting each fact with a specific record citation. See Carreras v. Sajo, García & Partners, 596 F.3d 25, 31 (1st Cir. 2010).

In addition, she has not developed a coherent argument explaining how these alleged comments evince that DCH regarded her as disabled to perform "either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities." Ruiz Rivera, 521 F.3d at 83. After all, the comments focused on her appearance and not in her capacity to do work. By failing to present a fully developed argument supporting that the alleged comments show that DCH regarded her as disabled, Plaintiffs have waived the issue. See Rocafort v. IBM Corp., 334 F.3d 115, 121 (1st Cir. 2003).[3]

These comments, if anything, seem better fitted as proof of an adverse employment action under a hostile work environment theory. In any event, as discussed below, this claim fails as a matter of law.

    b. Hostile Work Environment

To begin, the First Circuit has not explicitly ruled "on whether hostile work environment claims exist under the ADA." Rocafort v. IBM Corp., 334 F.3d 115, 120 (1st Cir. 2003). Still, it has proceeded under the assumption that such a claim is viable. See Murray v. Warren Pumps, LLC, 821 F.3d 77, 86, n. 1 (1st Cir. 2016) (collecting cases). To succeed, Otero must prove that "that her workplace was 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of ... [her] employment and create an abusive working environment.' " Colón–Fontánez v. Mun. of San Juan, 660 F.3d 17, 43 (1st Cir. 2011) (quoting Quiles–Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006)). But "[t]he workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins—thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard, cold world." Suárez v. Pueblo Intl, Inc., 229 F.3d 49, 54 (1st Cir. 2000). Indeed, "federal employment discrimination laws do not

---

[3] Plaintiffs did cite School Board of Nassau County v Airline, 480 U.S. 273 (1987) and Cook v Rhode Island, 10 F,3d, 17, 24 (1st Cir. 1993), as supporting their argument yet they failed to discuss either of them. "Passing reference to legal phrases and case citation without developed argument is not sufficient to defeat waiver." Rocafort, 334 F.3d at 121 (collecting cases).

establish 'a general civility code' for the workplace." Quiles-Quiles, 439 F.3d at 7 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). Therefore, the "standard cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held." Suárez, 229 F.3d at 54. The plaintiff must show that the harassment was both "objectively and subjectively offensive, [such] that a reasonable person would find hostile or abusive," and that the plaintiff in fact perceived it to be so. Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)). In assessing whether the harassment is actionable, courts consider the totality of the circumstances including "the severity of the conduct; its frequency; and whether it unreasonably interfered with the victim's work performance." Colón-Fontánez, 660 F.3d at 44.

Otero alleges that the following conduct by her supervisors constitutes actionable harassment under a hostile work environment theory: (1) daily comments that she looked horrible and that her appearance was affecting the corporate image because the patients thought that she had a contagious disease; (2) unfair disciplinary actions; and (3) increased workload. See Docket # 59, p. 20.[4] According to Otero, the harassment was so severe that she "was forced to receive psychiatric treatment and eventually was forced to submit her involuntary resignation." Id., p. 19.

Regarding the comments, the Court begins by finding that the alleged frequency is not supported by admissible evidence. Otero's statement that DCH officers made the comments on a "daily basis," without providing context, specific dates, and the persons involved in each instance, is too amorphous to satisfy the summary judgment standard. See e.g. Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) ("Statements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous to satisfy the requirements of Rule 56(e),

---

[4] In her brief, Otero states that her supervisors also threatened her with termination. See Docket # 59, p. 22. But that allegation is not even mentioned in her opposing statement of material facts, see Docket # 59-1. The Court therefore disregards it as it fails to comply with the local anti-ferret rule. See Local Rule 56(c).

even when proffered … by one who claims to have been a participant.")  But even taking as true the alleged frequency of the comments, they are "too mild to form the basis of a hostile work environment claim." see Villegas-Reyes v. Universidad Interamericana de P.R., 476 F. Supp. 2d 84, 91 (D.P.R. 2007) (finding that referring to the plaintiff as "anciana," "vieja," "abuela," and telling her that "she was too old and should retire" was insufficient to maintain a hostile work environment claim); see also Fernández-Ocasio v. WalMart Puerto Rico Inc., 94 F. Supp. 3d 160, 178, n. 34 (D.P.R. 2015) (collecting cases).

      As to the alleged disciplinary actions, Otero simply states that they were unfair and unjustified. But despite having the burden of presenting evidence to establish that DCH "took an adverse employment action against her because of the alleged disability," Vélez-Ramírez v. Puerto Rico through Sec'y of Justice, 827 F.3d 154, 157 (1st Cir. 2016), Otero does not point to specific instances of unfair disciplinary measures.[5] In any event, warnings and reprimands qualify as adverse employment actions only if they carry tangible consequences, see Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 73 (1st Cir. 2011), as when they are relied upon "to support material changes in terms and conditions of employment such as termination, suspension, change in compensation, payment of bonuses, and other benefits." Fernández-Ocasio, 94 F. Supp. at 173. Here, Otero did not present any evidence or even allegations of tangible consequences as a result of the disciplinary measures taken again her.

      Otero's claim that DCH drastically increased her workload also fails. She states that around June 2013, a week after DCH reduced her duties by assigning her

---

[5] Opposing DCH's contention that the disciplinary measures were justified, Otero complains that DCH "failed to state the specific conduct engaged by Otero for which the disciplinary action was issued to her, the date in which Otero engaged in the same, the persons that were present and were affected by the same." Docket 59-1, ¶ 18. But it is Otero who "bears the burden of presenting evidence to establish each element under the particular theory of disability discrimination alleged," Murray v. Warren Pumps, LLC, 821 F.3d 77, 83 (1st Cir. 2016), and she also failed to state the specific conduct, the dates, and the persons involved in the alleged unfair disciplinary actions.

exclusively to the registration area, DCH instructed her to assist another employee who did not know how to perform some functions such as filling in medical records. Docket # 59-3, pp. 35-36. But "[r]equiring an employee to perform her job is not considered an adverse employment action even if it involves more work." Fernández-Ocasio, 94 F. Supp. 3d at 172 (citations omitted). To sustain her claim, Otero had to "present evidence of what the regular tasks were, what new tasks were assigned, and under what conditions those tasks were performed." Id. (construing Ayala–Sepúlveda v. Municipality of San Germán, 671 F.3d 24, 31–32 (1st Cir. 2012) and Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 23 (1st Cir. 2002)). No such evidence was presented here. That Otero may have been instructed to assist a co-worker in some tasks a week after her own duties had been significantly reduced is not sufficient to sustain that her duties were "drastically" increased.

Dawing all inferences in Otero's favor, she failed to demonstrate that from an objective standpoint, DCH's actions were sufficiently severe or pervasive to sustain a hostile work environment claim. Since Otero's claim for constructive discharge was based on the same conduct alleged in her hostile work environment claim, it also fails as a matter of law.

    c. Retaliation

The ADA forbids retaliation "against any individual because such individual has opposed any act or practice made unlawful…or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA." 42 U.S.C. § 12203. This action is independent from, and "may succeed[,] even where [a] disability claim fails." Valle-Arce v. Puerto Rico Ports Auth., 651 F.3d 190, 198 (1st Cir. 2011) (citing Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007)). To establish a *prima facie* retaliation claim under the ADA, Figueroa "must show that (1) [he] engaged in protected conduct, (2) [he] suffered an adverse employment action, and (3) there was a

causal connection between the protected conduct and the adverse employment action." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012).

Inasmuch as the adverse employment action relied upon to sustain the retaliation claim is the same alleged in her hostile work environment claim that the Court already dismissed as a matter of law, Otero's retaliation claim fails at the outset. But even if she had a viable hostile work environment action, the retaliation claim would still falter.

To start, neither Plaintiffs' brief nor their opposing statement of uncontested facts pinpoints the exact date when Otero claims that she engaged in protected conduct for the first time. Otero states that she requested to be assigned to different positions that required less stress but she does not specify when these alleged requests were made. As far as the record reveals, the first instance of protected conduct is the EEOC charge that she filed on September 17, 2013. But in her deposition, Otero admitted that ever since she shaved her head until her resignation, DCH treated her exactly the same way. Docket # 48-4, p. 331. Contrary to what happened in Quiles-Quiles v. Henderson, 439 F.3d 1, 9 (1st Cir. 2006), here, Otero does not allege that her supervisors intensified the harassment or that she suffered from any other adverse employment action after she filed the EEOC claim. As a result, Otero has failed to satisfy the second and third prongs of a *prima facie* claim for retaliation.

d. Supplemental Claims

DCH also moves the Court to dismiss Plaintiffs' supplemental claims under Puerto Rico's counterpart to the ADA, Law No. 44 of July 2, 1995, P.R. Laws Ann. tit. 1, §§ 501 et seq., the Commonwealth's anti-retaliation statute, Law No. 115 of December 20, 1991, 29 P.R. Laws Ann. § 194a(a), and their tort claims under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141.

When deciding whether to exercise jurisdiction over state law claims, district courts must exercise "informed discretion," weighing "concerns of comity, judicial economy, convenience, and fairness." Redondo Const. Corp. v. Izquierdo, 662 F.3d

42, 49 (1st Cir. 2011). "[I]n the *usual* case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (2010) (italics in the original). Because DCH did not address the applicable factors as they relate to the case at hand, the Court follows the general rule and declines to exercise supplemental jurisdiction over the Commonwealth law claims. These claims are therefore dismissed without prejudice.

### IV.  Conclusion

DCH's motion for summary judgment is granted.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2016.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge